UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM CARRUBE

        Plaintiff,

      v.                         **REPORT AND RECOMMENDATION**
                                     **3:08-CV-0830 (FJS)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

      Plaintiff William Carrube brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security  ("Commissioner"), denying his application for Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.    Background

      On December 12, 2005, Plaintiff, then 37 years old, filed an application for SSI, claiming disability since May 15, 2004, because of bipolar disorder, neck problems, anxiety and depression, and a learning disability (R. at 57-60, 72, 75-76).[3] His

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.
[3] Citations to the underlying administrative record are designated as "R."

application was denied initially on February 23, 2006 (R. at 21, 47-50). Plaintiff filed a timely request for a hearing on April 27, 2006 (R. at 44).

On May 5, 2008, Plaintiff, his attorney and his mother appeared before the ALJ (R. at 397-420).The ALJ considered the case *de novo* and, on June 24, 2008, issued a decision finding Plaintiff was not disabled (R. at 9-20). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on July 22, 2008 (R. at 5-8). On July 31, 2008, Plaintiff filed this action disputing his disability determination.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

### III.   Discussion

#### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

---

[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[5] The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Based on the entire record, the Court recommends remand because the ALJ's assessment of Listing 12.05(C) is not supported by substantial evidence, and the ALJ failed to apply the proper legal standards in determining the RFC.

### B. Analysis

#### 1.    The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act (R. at 12). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful work activity since he protectively filed for SSI on November 25, 2005 (R. at 14). At step two, the ALJ found that Plaintiff had the following severe impairments: "spinal pain syndrome, history of substance abuse, bipolar depressive disorder with anxiety and borderline intelligence" (R. at 14). At step three, the ALJ considered Listings 1.04A, 12.02, 12.04, 12.05, and 12.09, but determined that Plaintiff's impairments did not meet or equal a listed impairment (R. at 14-16). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, limited to unskilled work, "which includes the ability to understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting" (R. at 16). In reaching this RFC, the ALJ considered Plaintiff's reported symptoms and found his testimony "not credible" to the extent it was inconsistent with the RFC (R. at 17). The ALJ also considered the medical opinions of record and gave no weight to the opinions of Joseph Blood, Plaintiff's treating physician's assistant ("PA"); no weight to the opinions of Dr. James Naughten, the State's consultative examining physician; and significant weight to Dr. Christine

5

Ransom, the State's consultative examining psychologist (R. at 18-19). The ALJ further found that Plaintiff could not perform his past relevant work (R. at 19). At step five, the ALJ concluded that Plaintiff was a younger individual, with a limited education and the ability to communicate in English (R. at 19). Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was not disabled by using Medical-Vocational Rule 203.26[6] as a framework (R. at 20).

### 2.      Plaintiff's Claims

Plaintiff argues that (a) the ALJ improperly assessed Listing 12.05(C); (b) the ALJ improperly determined Plaintiff's RFC; (c) the ALJ erred in failing to evaluate the credibility of Plaintiff's witness; and (d) because the ALJ found Plaintiff limited to simple tasks, he was required to call a vocational expert.

### a.  The ALJ's Listing 12.05(C) Analysis is Unsupported by Substantial Evidence and Lacks Sufficient Specificity to be Reviewable

Plaintiff objects to the ALJ's analysis of Listing 12.05(C), Mental Retardation. Plaintiff's Brief, pp. 3-6. Defendant argues that the ALJ properly assessed Listing 12.05(C).

A claimant who meets of equals a listed impairment, by showing he meets all of the criteria for the Listing, is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); see also Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (requiring a claimant show he meets all the criteria of a Listed impairment). Listing 12.05(C) states in pertinent part:

---

[6] Medical-Vocational Rule 203.26 indicates a finding of not disabled for a claimant who is a younger individual, with limited education or less, and skilled or semi-skilled past work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 203.26.

12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[7]

The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Thus, to meet Listing 12.05(C) Plaintiff must show (1) below average intellectual function with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ score of 60 through 70, and (3) an impairment, other than his low IQ, that imposes "an additional and significant work-related limitation of functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

In this case, the ALJ found that Plaintiff did not meet Listing 12.05(C), and reasoned as follows:

The claimant completed school through primary level only. He reported that he had a learning disability. The results of Wechsler Adult Intelligence Scale (WAIS-III) performed by Dr. Ranson [sic] in January 2006 yielded a full scales IQ of 68, a verbal IQ of 68; and a performance IQ of 74 which is the mildly deficient to borderline range (Exhibit 10F). Despite these results, the evidence does not establish mental retardation with deficits in adaptive behavior manifested during his developmental period i.e. before age 22. No mental examiners noted a deficient mental capacity and the claimant is independent in his own care and has history of work activity. Testing showed performance IQ was border line but that verbal IQ and full scale IQ were mildly deficient, these scores may very well be associated with his learning disability and or his alcohol/substance abuse.

---

[7] To meet Listing 12.05, a claimant must satisfy this introductory paragraph, sometimes called the diagnostic description or a capsule definition, in addition to the criteria in one of the subparagraphs. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) ("If your impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets [Listing 12.05].").

(R. at 15). In a later section, the ALJ further reasoned:

> The claimant's attorney has argued that the claimant's intelligence testing showed him to be mentally deficient, but the evidence does not establish such despite these scores (Exhibit 10F). The claimant has reported that he left school early due to a learning disability but there is no evidence of mental deficiency. He can care for himself and perform chores and he reported working from 1998 to 2004 in the construction business as tile/marble setter helper [sic]. He reported that he stopped working in 2005 as his employer wanted to send him to work in Albany and he had no way of getting there and he was having a drinking problem (Exhibit 2E). None of the examiners observed a mental deficiency and it was noted by an evaluator at the Addiction Center of Broome County that he had 'average intelligence as evidenced of his good points of knowledge' (Exhibit 5F).

(R. at 18). After carefully reviewing the record the Court concludes that the ALJ's analysis of Listing 12.05(C) is flawed in two respects.

First, the ALJ's conclusion that Plaintiff lacked the requisite "deficits in adaptive functioning" is unsupported by substantial evidence in the record. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ found that "[d]espite [the IQ] results, the evidence does not establish mental retardation with deficits in adaptive behavior manifested during his developmental period i.e. before age 22" (R. at 15). The ALJ reasoned that Plaintiff was "independent in his own care," "has a history of work activity," "can care for himself and perform chores" (R. at 15, 18). The Court acknowledges that the record indicates Plaintiff can perform his daily activities and has a long work history. For example, Dr. Ransom indicated that Plaintiff can "dress, bathe and groom himself, cook and prepare food, do cleaning, laundry and shopping . . . [and] manage money" (R. at 278-79). Although Plaintiff now lives with his mother again, he originally stopped living with her when he was 14 and until recently lived in Brooklyn (R.

at 237, 355). Plaintiff reported that he worked for various employers as a tile setter from 1986 through 2004 (R. at 96).

However, the record also indicates that Plaintiff has profound difficulties with social interaction and with dealing with everyday stress. This evidence is important because it significantly contradicts the evidence that the ALJ relied upon to find Plaintiff lacked "deficits in adaptive functioning." As one court explained deficits in adaptive functioning "denotes an inability to cope with the challenges of ordinary everyday life." Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing Diagnostic and Statistical Manual of Mental Disorders-IV 42 (4th ed. 2000)). Dr. Ransom noted that Plaintiff did not socialize with anyone besides his mother, and spent most of his time sitting at home (R. at 279, 411-13).Plaintiff's social worker at the Addiction Center of Broome County ("ACBC"), Mike Cooke, observed that Plaintiff's "activity pattern indicates moderate isolation" (R. at 238). Plaintiff reported that he had lost at least one job because he did not get along with other workers (R. at 92). The record also indicates that Plaintiff stabbed a policeman while he was intoxicated in 1992 (R. at 144);stabbed a store clerk when he was high and shoplifting in 2002 (R. at 115); that in 2005 he was suspended from a group rehabilitation meeting because he had been harassing a woman in the group who then had an order of protection issued against him (R. at 210); and that he hit a friend when he was drunk and was arrested for aggravated assault in February 2008 (R. at 414). Dr. Ransom also stated Plaintiff "obtained [a] mentally deficient functioning in social judgment" in his intellectual evaluation in January 2006 (R. at 278). Plaintiff reported that his only family contact is with his mother and he had not seen his daughter or granddaughter since 2005 (R. at 326). The record also reveals that Plaintiff

9

has a history of burning himself on his arms when overwhelmed, most recently in late
2007 (R. at 115, 175, 216, 316, 356). Additionally, Plaintiff attempted suicide five times:
three stabbing attempts, once with a gas stove, and once with a pen gun (R. at 115,
355, 418). On August 31, 2003 Plaintiff was admitted to the Westchester Medical
Center for suicidal ideation and thoughts of stabbing himself (R. at 121, 115-46).
Plaintiff's mother testified that when Plaintiff lived with her she observed that he would
cry, sleep a lot, burn himself, not go out and isolate himself, and sometimes go a couple
days without showering (R. at 418-19). She also reported that when Plaintiff was a child,
he tried to shoot himself in the stomach with a pen gun (R. at 418).

The Court is troubled by the ALJ's failure to assess any of this evidence, which
strongly indicates that Plaintiff has "an inability to cope with the challenges of ordinary
everyday life." Novy, 497 F.3d at 710 (defining deficits in adaptive functioning) (citing
DSM-IV 42); see also West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698
(6th Cir. 2007) (unpublished decision) ("Adaptive functioning includes a claimant's
effectiveness in areas such as social skills, communication, and daily living skills.").
Given the evidence indicating that Plaintiff has profoundly limited functioning in social
interaction and dealing with everyday life, the Court concludes that substantial evidence
in the record as a whole does not support the ALJ's conclusion that Plaintiff lacks
"deficits in adaptive behaviors" (R. at 15).

Nonetheless, the Court recognizes that some of Plaintiff's problems with social
interaction and dealing with stress may be related to his drug and alcohol addictions.
See (R. at 237, 354) (noting that Plaintiff indicated that some of or all his legal problems
were related to drug and alcohol use). On remand, the ALJ must consider all the

evidence, including Plaintiff's limitations due to drug and alcohol abuse, and determine whether Plaintiff is disabled. Day v. Astrue, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (explaining that the "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders") (quoting Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.2003)). If the ALJ finds Plaintiff disabled, he must then determine whether drug addiction and alcoholism is material. 20 C.F.R. § 404.1535(a) ("If we find that you are disabled . . . [then], we must determine whether your drug addiction or alcoholism is . . . material to the determination of disability."); 20 C.F.R. § 404.1535(b)(1)-(2) (explaining that drug addiction or alcoholism is material if, absent the use of drugs and alcohol, a claimant's remaining limitations are disabling).

Plaintiff has also argued that the ALJ improperly rejected his IQ scores. Plaintiff's Brief, pp. 4-5. As an initial matter the Court notes that it is unclear whether the ALJ intended to reject Plaintiff's IQ scores as invalid. Although the ALJ's analysis appears to question Plaintiff's IQ scores, (R. at 15) (the ALJ reasoned that the IQ scores "may very well be associated with his learning disability and or his alcohol/substance abuse"), he never explicitly rejected the IQ scores or found them inconsistent with the record. See Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (stating that "an ALJ is not required to accept a claimant's IQ scores when they are inconsistent with the record") (quoting Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir.1986)). The ALJ's failure to clearly articulate his reasoning with respect to the IQ scores frustrates this Court's ability to determine whether the substantial evidence supports the decision.

11

See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (requiring the Commissioner to set forth the crucial factors in [his] determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."). Therefore, the Court also recommends remand so the ALJ can "explain[] in clear and understandable language the specific reasons for the decision." 20 C.F.R. § 405.370(a).

Even assuming *arguendo* that the ALJ was rejecting Plaintiff's IQ scores, substantial evidence does not support such a finding because Plaintiff's "IQ scores are not inconsistent with the record as a whole." Vasquez-Ortiz, 48 F.Supp.2d at 257. In *Vasquez-Ortiz*, the Western District Court of New York found the Plaintiff's IQ scores "not inconsistent with the record" where the evidence showed Plaintiff had a very limited educational background (having completed somewhere between the second and fifth grades), difficulty reading and writing in Spanish, "no concept of basic mathematics," and that two psychologists and a psychiatrist examined Plaintiff and believed he had low intellectual functioning. Id. Similarly, in this case, the record indicates that Plaintiff has a limited education, difficulty with reading, writing and mathematics, and that the only examining psychologist found Plaintiff to have mildly mentally retarded intellectual functioning. The record indicates Plaintiff completed somewhere between the fourth and seventh grades and may have been in special education (R. at 211, 238, 271, 276, 403-04). Dr. Ransom assessed Plaintiff's reading ability as borderline, his arithmetic as low average, and his written language skills as borderline (R. at 278); see also (R. at 238) (indicating Plaintiff scored the grade level equivalent of 8.5 in reading and 5.9 in math on the Test of Adult Basic Education); (R. at 278) (indicating Plaintiff "obtained a WRAT-

III reading achievement test score of fourth grade indicating difficulties with reading").

Finally, the record also shows that Dr. Ransom, the only examining psychologist, found

Plaintiff to have "mildly mentally retarded intellectual functioning" with mild to moderate

difficulties maintaining attention and concentration, maintaining a regular schedule,

learning new tasks, performing complex tasks, relating adequately with others, and

appropriately dealing with stress (R. at 279). Given the similarities between the

evidence in the case at bar and *Vasquez-Ortiz*, this Court could only conclude that the

evidence of record was not inconsistent with the Plaintiff's IQ scores. See Vasquez-

Ortiz, 48 F.Supp.2d at 257.    Moreover, the Commissioner is permitted to infer that a

diagnosis of mental retardation when the longitudinal history and evidence of current

functioning demonstrate that the impairment existed before the age of 22.  65 Fed. Reg.

50746, 50772 (Aug. 21, 2000) (explaining that the Commissioner has always interpreted

the requirement that a claimant show mental retardation "manifested" before the age of

22 to "include the common clinical practice of inferring a diagnosis of mental retardation

when the longitudinal history and evidence of current functioning demonstrate that the

impairment existed before [the age of 22]"); see also Vasquez-Ortiz, 48 F.Supp.2d at

257 (stating that "[a]bsent any evidence of a change in plaintiff's intellectual functioning,

it is appropriate to assume that plaintiff's IQ has not changed since his twenty-second

birthday.") (citations omitted).  Accordingly, on remand should the ALJ accept evidence

of currently limited adaptive functioning, he may infer that the limitation existed before

the age of 22.

> **b.  The ALJ Failed to Apply the Proper Legal Standard in
>       Determining Plaintiff's RFC**

Plaintiff raises several objections in arguing that the ALJ's RFC determination is unsupported by the record. Plaintiff's Brief, pp. 6-11. Defendant argues that the RFC was properly determined and supported by the evidence of record. Defendant's Brief, pp. 15-20. After a careful review of the record, the Court concludes that the ALJ's RFC determination contains several errors of law necessitating remand.

An RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3); see Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir. 1984).The RFC determination must specify the exertional functions a claimant is capable of performing, which include the ability to sit, stand, walk, lift, carry, push and pull, as well as specifying the non-exertional functions a claimant is capable of performing, which include non-strength demands such as maintaining attention or concentration, and reaching, handling, or crouching. 20, C.F.R. §§ 404.1569a(b)-(c); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999). For an RFC to withstand judicial scrutiny, substantial evidence must support the findings for each exertional and non-exertional ability. See Martone, 70 F.Supp.2d at 150 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).

In this case, the ALJ articulated only three functional abilities in Plaintiff's RFC—the abilities to lift, carry, and perform simple tasks—but the ALJ failed to specify Plaintiff's other relevant abilities such as sitting, standing, walking, maintaining attention and concentration, interacting with the public and co-workers, or keeping a schedule.

Given the evidence of record indicating lumbar spine impairments, limited intellectual functioning, asthma, and bipolar disorder, as well as the ALJ's findings at

14

step two that Plaintiff had moderate difficulties in maintaining attention and concentration and social interaction (R. at 15, 115, 209, 271-80, 284-86, 300-13, 340, 386), these are abilities in which Plaintiff could reasonably be expected to experience limitations.  Instead, the ALJ determined:

> While the evidence does establish spinal pain syndrome, there is no significant spinal abnormality and only occasional exacerbations which would make heavy and very heavy work difficult to perform but there is no reason why he would be unable to perform medium work which requires lifting and carrying up to 25 pounds frequently and 50 pounds occasionally. In regard to his mental status, his bipolar depressive syndrome is well controlled with medication and even with substance abuse exacerbations; there is no reason why he would be unable to perform simple unskilled work.

(R. at 19).[8]

Although the ALJ considered some of Plaintiff's exertional and non-exertional abilities when he assessed Plaintiff's abilities to lift, carry and perform simple tasks, his failure to indicate Plaintiff's remaining exertional and non-exertional abilities on a function-by-function basis is error. Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) (finding error in ALJ's failure to "determine plaintiff's ability to sit, stand, walk, lift and carry" as required by the regulations); Crysler v. Astrue, 563 F.Supp.2d 418, 437-38 (N.D.N.Y. 2008) (remanding where the ALJ found the Plaintiff could perform sedentary work, but failed discuss to what extent she could lift, carry, walk, stand, sit, withstand postural, manipulative, or environmental conditions);  see generally Miles v. Barnhart, No. 6:06-CV-391, 2008 WL 5191589, at  *9 n.4 (N.D.N.Y. Dec. 8, 2008) (collecting

---

[8] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and "[i]f someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). Light work "requires a good deal of walking or standing , or . . . it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

cases remanding on failure to determine limitations on a function-by-function basis and noting that only the Southern District in New York has consistently found function-by-function analysis "desirable" but not mandatory).

Furthermore, the ALJ failed to explain what evidence supports his conclusion that Plaintiff can lift and carry twenty-five pounds frequently and fifty pounds occasionally. See Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y. 2007) ("It is well-settled that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).") (quoting S.S.R. 96-8p, 1996 WL 374184, at *7). A careful review of the record reveals no evidence which supports this finding. The State agency's physician found Plaintiff "would be able to lift and carry a mild degree of weight on an intermittent basis" (R. at 284). Plaintiff's treating source, physician's assistant Joe Blood offered no opinion on Plaintiff's ability to lift and carry (R. at 359-61). Even the disability analyst, a non-medical source, found Plaintiff was limited to frequently lifting ten pounds and occasionally lifting twenty (R. at 291). Notably, Plaintiff was never asked what weight he could lift and carry. See (R. at 84-111) (disability reports filled out by Plaintiff where he is never asked how much he can lift or carry); (R. at 397-420) (hearing in which Plaintiff is never asked about his ability to lift or carry). Furthermore, the Court notes that a 2007 MRI  showed posterior disc bulges and protrusions at L5-S1, L4-L5, and L3-L4, with mild narrowing of the lateral foramina at L5-S1 and L4-L5, mild encroachment of the neural foramina at L3-L4, and mild central canal stenosis; but, Plaintiff only mentions Plaintiff's more normal 2005 MRI (R. at 17, 386). The Court cannot fathom what might support the ALJ's conclusion that

16

Plaintiff could lift and carry twenty-five to fifty pounds. Because the Second Circuit has said that "the failure to specify the basis for a conclusion as to residual functional capacity is reason enough to vacate a decision," White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990), the Court also recommends remand for the ALJ's failure to explain the basis for the RFC conclusions.

Finally, the ALJ also erred in failing to weigh the opinion of State agency reviewing psychologist, Dr. M. Morog (R. at 296-99). Dr. Morog indicated that Plaintiff would be moderately limited in many areas of mental functioning relevant to Plaintiff's RFC, such as understanding and remembering detailed instructions, maintaining attention and concentration, performing within a schedule, maintaining regular attendance, sustaining a routine, working in coordination with others, interacting with the general public, accepting instruction and criticism, and getting along with co-workers (R. at 296-97). Even though Dr. Morog's opinions were relevant to Plaintiff's RFC, the ALJ failed to even discuss Dr. Morog's findings. (R. at 18-19); see also SSR 96-8p, 1996 WL 374184, at * 4 (S.S.A. 1996) (explaining that the mental limitations identified at steps 2 and 3 are not an RFC and the mental components of the RFC require "a more detailed assessment by itemizing various functions").The regulations explicitly state that the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist" unless he gives the treating physician's opinion controlling weight. 20 C.F.R. § 416.927(f)(2)(ii); see, e.g., Richardson v. Barnhart, 443 F.Supp.2d 411, 425 (W.D.N.Y. 2006) (finding legal error where ALJ failed to explain the weight given to the Commissioner's medical consultants). As the record did not contain a treating physician's opinion in this case,

17

the ALJ was required to explain the weight he gave to Dr. Morog's opinions, and failure to do so constitutes reversible error.

Because the ALJ failed to assess all of Plaintiff's relevant exertional and non-exertional abilities, failed to provide a narrative discussion specifying the basis for his RFC findings, and failed to weigh the opinions of Dr. Morog, the Court recommends remand. See SSR 96-8p, 1996 WL 374184, at *3-4, 7; 20 C.F.R. § 416.927(f)(2)(ii).

Plaintiff's remaining objections to the ALJ's RFC determination need not be reached because the Court has concluded that the ALJ failed to apply the proper legal standard in several respects. See Plaintiff's Brief, pp. 11.

### c. The ALJ did not Err in Failing to Make a Credibility Finding with Respect to Mrs. Carrube's Testimony

Plaintiff argues that the ALJ erred in failing to explain how he considered the testimony of Plaintiff's mother, arguing "[f]ailure to make credibility findings regarding the testimony of a witness is error." Plaintiff's Brief, p. 12.

When an ALJ assesses a claimant's symptoms, such as pain, the regulations require the ALJ to consider statements from "other persons" about "how the symptoms affect your activities of daily living and your ability to work." 20 C.F.R. § 416.929(a); see also 20 C.F.R. § 416.912(b)(3) (defining evidence to include statements by others about a claimant's impairments, restrictions, daily activities, efforts to work, and other relevant statements).Thus, the regulations clearly envision that an ALJ consider the testimony of witnesses other than the claimant. In this case, the ALJ clearly considered the testimony of Plaintiff's mother, Barbara Carrube, because he summarized her brief testimony in his decision (R. at 17).

However, Plaintiff argues that the ALJ had a further duty to "indicate whether or how he considers said testimony" and that a "[f]ailure to make credibility findings" is "error." Plaintiff's Brief, p. 12. Plaintiff cites a Second Circuit decision in which it remanded a case where the hearing officer did not discuss the credibility of either the claimant or the claimant's wife, stating that "the lack of such findings undercuts the Board's conclusion that there is substantial evidence sufficient to believe Harris is not impaired." Harris v. Railroad Retirement Bd., 948 F.2d 123, 125, 127 (2d Cir. 1991). The Court notes that the Second Circuit remanded under similar circumstances in *Williams ex rel. Williams v. Bowan.* 859 F.2d 255, 260-61 (2d Cir. 1988) (stating that the "failure to make credibility findings regarding [both witnesses'] critical testimony fatally undermines the Secretary's argument that the claimant is not under a disability").

The Court concludes that these cases do not apply in the instant case, because in both Second Circuit cases, the hearing officer or ALJ failed to assess the credibility of both the claimant and the claimant's witness. In this case, the ALJ assessed Plaintiff's testimony and found it not credible (R. at 17).[9] Moreover, the Court notes that in this particular case, the Plaintiff's mother's testimony was very brief, taking up only two and half pages at the end of the transcript (R. at 417-19). This brief testimony was summarized in the ALJ's decision and clearly considered (R. at 17). Because the ALJ considered Mrs. Carrube's testimony and because he assessed Plaintiff's credibility, the Court declines to find error on this claim.

### d. The ALJ's Remaining Analysis is Necessarily Flawed

Plaintiff has also argued that the ALJ erred in failing to call a vocational expert

---

[9] The Court notes that there was no objection to the ALJ's credibility assessment of Plaintiff's testimony.

when he found Plaintiff limited to simple tasks. Plaintiff's Brief, pp. 11-12. However, because the Court has already concluded that the ALJ erred in assessing Listing 12.05(C) and in determining Plaintiff's RFC, the ALJ's remaining analysis is necessarily flawed.

## IV.    Conclusion

After carefully examining the administrative record, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. The Court concludes that the ALJ's analysis of Listing 12.05(C) is in part unsupported by substantial evidence and in part lacks sufficient specificity to allow the Court to review the findings, and that the RFC analysis lacks relevant exertional and non-exertional abilities, a narrative explanation, and failed to weigh the opinions of Dr. Morog. Based on the foregoing, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED: December 2, 2009
Syracuse, New York

**Orders**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

Victor E. Bianchini
United States Magistrate Judge

DATED: December 2, 2009
Syracuse, New York

21